JAMES E. MARCUM v. CLOVER LEAF CREAMERY COMPANY AND ANOTHER.[1]

December 5, 1947.

No. 34,442.

[1]Reported in 30 N. W. (2d) 24.

*Dorsey, Colman, Barker, Scott & Barber* and *Charles F. Noonan,* for appellants.

*Thomas H. McMeekin* and *John Ott,* for respondent.

LORING, CHIEF JUSTICE.

This is an appeal by both defendants from an order denying their motion for judgment notwithstanding the verdict or a new trial. James E. Marcum, a child of tender years, brought an action through his father as natural guardian to recover for personal in-

juries sustained through the alleged negligence of defendant cream-ery company as owner and of Howard Keating as driver of a milk truck.

September 25, 1944, about noon, the truck here involved was driven north on Forty-fifth avenue south in Minneapolis and stopped on the east side of that avenue near the curb before the Smith house at 4239 Forty-fifth avenue south. The driver made a delivery of milk to that address. It is his testimony that as he returned to the truck after making the delivery and picking up some empty bot-tles he looked to the front and to the rear of the truck and saw nothing. He testified that he then got into the truck, moved the empty milk bottles, turned the driver's seat around, put the car in low gear, looked to his left and to the rear, and pulled away from the curb. He had proceeded about the length of the truck when he felt a bump. He stopped the truck after traveling another truck length, got out, walked to the rear of the truck by way of the left side, and saw plaintiff lying in the street.

There was no eyewitness to the actual happening of the injury to the child, but one Patricia Schmelitsch, a six-year-old girl (eight at the time of the trial), who lived in the second house from the Smiths, testified that on the day in question she was returning from school just prior to the accident and that she saw defendants' milk truck parked in front of the Smith house, with plaintiff sitting on the curb about two feet in front of it with his feet sticking out, playing with the sand near the curb. She testified that she saw no one in the milk truck at that time. She was in a hurry and went directly through her house to the back yard. From there, she heard the child cry and ran back through the house and to the front window, from which point she saw him lying in the street "kind of near to the curb" right in front of where she had seen him sitting.

A neighbor, who did not see the accident but who arrived on the scene immediately after hearing the child cry, testified that on the basis of his observation of the position of the truck taken from across the street, somewhat to the rear before it was moved, and

the position in which the child was found after the truck stopped, the child must have been in front of the truck when it started.

The child suffered a broken femur of the left leg. He was in the hospital eight weeks. The attending physician estimated that it would probably be another two years from the date of the trial (four years in all from the time of the accident) before the affected leg assumed the size and strength of the other leg. He was also of the opinion that the child would outgrow any weakness that might be present at the time of the trial. The court charged the jury as a matter of law that there was no evidence to warrant a recovery as for a permanent injury or disability. The jury returned a verdict of $4,500.

Defendants contend that the court erred in refusing to direct a verdict for them at the close of plaintiff's case and that the evidence does not sustain a finding of negligence on the part of the driver. They assign error in the court's charge and on its refusal to give their requested instructions.

■ Defendants' principal contention is that the evidence does not sustain any verdict against them. They rely principally upon O'Neil v. Cochrane, 184 Minn. 354, 356, 238 N. W. 632, 633, which involved a somewhat similar state of facts. There, however, the truck driver approached his truck from the left side and did not see the child, who was on the right side of it. Having observed nothing in front of or behind the truck or on the left side of it, he started the truck and injured the child. The trial court dismissed the action, and this court affirmed its action, saying:

"* * * Having seen no one around the truck or in the alley as he returned from plaintiff's house, we do not think that ordinary prudence required him to investigate the right side of his vehicle farther than he did from the seat at the wheel. In our opinion the trial court properly dismissed the action."

In that case, as in this, there was no showing that the driver had observed children habitually playing in that part of the street or around his truck. We think that in the case at bar the testimony

of Patricia as to the presence of the child just in front of the right wheel of the truck shortly before the accident and the child's position at the same spot immediately after the accident, supported as it was by the witness from across the street, justified an inference that the child was there in the brief interim and visible to the driver had he looked when he walked from the Smith house to the truck. There were no obstructions to his vision and no circumstances calculated to divert his attention. As opposed to the driver's testimony, the testimony of the witnesses created a question of fact as to whether the driver looked toward the place where the child was as he came out of the house. If the jury concluded that he did not look and that the child was there in plain sight, then the driver failed to exercise ordinary care, which failure contributed to the injury of the child. It was a jury issue. See, Moore v. Kujath, 225 Minn. 107, 29 N. W. (2d) 883.

■ Defendants complain of the court's instruction, quoting M. S. A. 169.19, subd. 3, which provides:

"No person shall start a vehicle which is stopped, standing, or parked unless and until such movement can be made with reasonable safety."

This statute requires only reasonable care. It does not make the operator an insurer, but requires only that he exercise reasonable care. Defendants objected to the giving of this instruction, but did not suggest an interpretation of it.

■ Defendants assign error on the court's refusal to give their first request to charge, which, in effect, directed the jury to find for defendants unless there were special circumstances calling for the exercise of "special diligence" on their part. What we have previously said indicates our view that the facts did not present a situation to which such an instruction would have been appropriate.

■ Defendants' assignment of errors as to excessive damages and misconduct of counsel is defective and insufficient to raise either question under our rules. Both questions are attempted to be raised by one assignment, and that in regard to misconduct does

not specify the matters claimed to be misconduct. Assignments must be separately stated, and as to such matters as misconduct they must definitely specify the misconduct. The respondent has a right to know definitely the target toward which the assignment is addressed. Failure properly to assign errors is a waiver of such errors. Schleuder v. Corey, 30 Minn. 501, 16 N. W. 401. However, respondent by voluntarily arguing the point, as he did in this case as to excessive damages, and one incident of misconduct, may, in his turn, waive objection to the failure to assign errors and litigate the question by consent.

■ As to the claim of excessive damages, we have fully considered the evidence. In view of the decreased purchasing power of the dollar, we do not find that the verdict was so excessive as to indicate passion or prejudice.

■ The one charge of misconduct voluntarily argued by respondent related to permanent nerve injury. The trial court instructed the jury to disregard counsel's statement and later instructed the jury that there was no evidence of permanent injury. Respondent's argument to the jury was replete with improper statements, some of them so reprehensible that the trial court should have interfered on its own motion in the interests of justice. However, since this is a civil case and proper assignments do not raise the question, we cannot reverse on their account. This holding is not affected by the fact that the misconduct was such that the trial court should, on its own motion, have interfered to correct it. If it is not properly assigned as error here, it is waived.

Order affirmed.