# ELVIRA BISBEE v. KARL JO RUPPERT AND OTHERS. ARDEN DAHL, INDIVIDUALLY AND d.b.a. TRAXINGER & DAHL MOTORS, THIRD-PARTY DEFENDANT.

235 N. W. 2d 364.

October 17, 1975—Nos. 45198, 45218.

40

*Cousineau, McGuire, Shaughnessy & Anderson* and *Robert J. McGuire,* for appellants Michael and Herbert Ruppert.

*Winter, Lundquist, Sherwood & Athens* and *Marvin E. Lundquist,* for appellants Karl and Raymond Ruppert.

*Molter & Runchey* and *Robert L. Runchey,* for plaintiff-respondent.

*Quarnstrom, Doering, Pederson, Leary & Murphy* and *W. P. Quarnstrom,* for respondent Dahl.

Heard before Sheran, C. J., and Kelly and MacLaughlin, JJ., and considered and decided by the court en banc.

SHERAN, CHIEF JUSTICE.

Defendants, Michael Ruppert, Herbert Ruppert, Karl Jo Ruppert, and Raymond Ruppert, appeal from the judgment entered in favor of plaintiff-respondent, Elvira Bisbee, and from an order denying their separate motions for judgment notwithstanding the verdict, remittitur, or, in the alternative, a new trial. Elvira Bisbee, a passenger in a motor vehicle driven by third-party defendant, Arden Dahl, commenced this action to recover for personal injuries suffered by her when the Dahl vehicle was involved in a head-on collision with a vehicle driven by defendant Karl Jo Ruppert and owned by defendant Raymond Ruppert and was then struck from behind by a vehicle driven by defendant Michael Ruppert and owned by defendant Herbert Ruppert. Karl and Raymond Ruppert and Michael and Herbert Ruppert cross-claimed against each other, and the latter defendants also joined Dahl as a third-party defendant. At the close of all the evidence, the trial court directed a verdict as to defendant Dahl. The case was trial to a jury and judgment was entered on the jury verdict in favor of Bisbee in the amount of $55,000. Eighty percent of the total causal fault of the parties was attributed to Karl Ruppert and 20 percent was attributed to Michael Ruppert. Michael and Herbert Ruppert and Karl and Raymond Ruppert perfected separate appeals. We affirm.

The automobile accident out of which this litigation arose occurred on December 3, 1971, at approximately 10 p.m. on County State Aid Road No. 11 (Highway No. 11) in Lyon County. Defendant Karl Ruppert was proceeding north on Highway No. 11, and Arden Dahl with Elvira Bisbee as a passenger was proceeding south on the same road. Michael Ruppert was following immediately behind the Dahl vehicle. At the time of the accident, the road was slippery and had not been salted.

Immediately prior to the collision, Dahl was traveling at a speed of 25 to 30 miles per hour. Behind him was the Michael Ruppert vehicle, traveling at approximately 30 to 45 miles per hour and gaining fast. Dahl then saw the Karl Ruppert vehicle

approximately 1,300 feet ahead of him on the highway. The headlights were swaying back and forth from one side of the road to the other, and the vehicle was apparently fishtailing. When the two vehicles were 275 feet apart, it was obvious that the Karl Ruppert vehicle was fishtailing. The speed of the Karl Ruppert vehicle at that time was approximately 30 to 45 miles per hour.

The Dahl vehicle and the Karl Ruppert vehicle crashed. Within 2 or 3 seconds, the Michael Ruppert vehicle struck the Dahl vehicle from behind.

The issues before us on appeal are as follows:

1. Did the trial court err in excluding the testimony of witnesses who would have testified to smelling liquor on Arden Dahl's breath at the hospital emergency room after the accident?

2. Did the trial court err in excluding the testimony of occupants of the Karl Ruppert vehicle who would have testified that they could not see on what portion of the roadway the Dahl vehicle was at the time of the collision?

3. Did the trial court err in directing a verdict as to Arden Dahl?

4. Did the trial court improperly limit the comments of counsel for Karl and Raymond Ruppert as to the effect of the special verdict?

5. Did plaintiff's counsel commit prejudicial and reversible error during final argument?

6. Was the verdict excessive and rendered under the influence of passion and prejudice?

■ Counsel for Karl and Raymond Ruppert offered to prove that Leslie Prouty, a passenger in the Karl Ruppert vehicle, would testify that she saw Dahl at the hospital on the night of the accident; that she was within a foot or two of his face; that he smelled very strongly of intoxicating liquors; and that he appeared to be either in a state of shock or state of intoxication. At the time of the accident, Miss Prouty was 13 or 14 years old. It appeared that Miss Prouty's observations occurred some time after midnight. Counsel sought to have the evidence admitted

both as substantive evidence and to impeach Dahl, who had testified that he had drunk no alcoholic beverages on the night of the accident.

The trial court excluded the evidence, stating that he considered it too insubstantial to indicate anything with respect to Dahl's condition at the time that Dahl was driving the vehicle. He noted that none of the other persons who had close contact with Dahl prior to and after the accident had either seen Dahl imbibe or had noticed the smell of alcohol. He also noted that Miss Prouty's testimony would not show that Dahl had had enough to drink to affect his driving ability.

Counsel pointed out that Raymond Ruppert would testify that he also smelled the alcohol on Dahl's breath at the hospital and thus corroborate Miss Prouty's testimony. The trial court also ruled this evidence inadmissible, pointing out that this observation apparently took place some time after the accident.

We hold that the trial court acted well within its broad discretion in excluding this evidence. Whether a proper foundation has been laid for the admission of opinion evidence as to intoxication rests almost wholly within the discretion of the trial court. See, State v. Peterson, 266 Minn. 77, 123 N. W. 2d 177 (1963); State v. Simonsen, 252 Minn. 315, 89 N. W. 2d 910 (1958); Clarke v. Philadelphia & Reading Coal & Iron Co. 92 Minn. 418, 100 N. W. 231 (1904). The validity of observations of intoxication in a hospital emergency room after an accident would be questionable under the best of circumstances. Here, the proffered testimony would have been highly prejudicial and would have shed little light on the question of whether Arden Dahl was intoxicated at the time of the accident. There was no abuse of discretion.

■ Counsel for Karl and Raymond Ruppert offered to prove by the testimony of Steve Malone, a passenger in the Karl Ruppert vehicle, that Malone looked forward and saw the Dahl vehicle just prior to the accident and was unable to determine on what portion of the roadway the accident occurred. The trial court excluded the evidence for lack of foundation, noting that

Malone had had insufficient opportunity to observe. Malone had previously testified that he was unable to see the centerline of the highway because it was obscured by ice and snow.

There is no merit to Karl and Raymond Ruppert's contention that the exclusion of this testimony constituted reversible error. It is well settled that the exclusion of evidence for lack of foundation rests in the sound discretion of the trial court and will not be disturbed unless justice requires. See, e. g., Smith v. Kahler Corp. 297 Minn. 272, 211 N. W. 2d 146 (1973).

Thus, even if foundation were adequate, exclusion of the evidence would not require a retrial. It is obvious that Malone's testimony that he did not know on what portion of the roadway the vehicles were at the time of the impact would have had virtually no value in resolving the disputed fact questions. At most, exclusion of the testimony was harmless error.

■ The Rupperts argue that the trial court erred in directing a verdict in favor of Arden Dahl at the close of all of the evidence. They contend that there was sufficient evidence of his negligence to create a jury issue.

Specifically, the Rupperts contend that the jury could have found that Dahl violated certain highway traffic regulation statutes, giving rise to a prima facie case of negligence. See, Minn. St. 169.96. They point to various bits of testimony in support of these contentions.

First, they contend that Dahl may not have kept his vehicle in his lane as required by Minn. St. 169.18. They rely on the testimony of Karl Ruppert who stated that during his fishtailing he straddled the centerline; that he thought he was in the center of the road during the fishtailing; and that part of his vehicle must have been in the wrong lane. The Rupperts imply that one could infer that if Dahl had kept to the right, the two cars could have passed each other without incident. Karl Ruppert's testimony was so uncertain as to the position of his vehicle, however, that no inferences can be drawn as to the position of the Dahl vehicle. Moreover, there was a good deal of evidence tending to

show that Dahl stayed as far to the right as possible. Dahl testified that he stayed on the far right side of his proper lane up to the point of impact and that his right wheels were on the shoulder, and Elvira Bisbee and Michael Ruppert agreed.

Second, the Rupperts suggest that Dahl did not signal before stopping as required by Minn. St. 169.19, subds. 6 and 7. Even Michael Ruppert testified, however, that Dahl's brake lights flashed at least once. Moreover, justification for any violation was shown by the fact that Dahl did not voluntarily stop his vehicle but that it was stopped by the force of the crash.

Finally, the Rupperts argue that Dahl may have been negligent in failing to pull entirely off the traveled portion of the roadway and in failing to stop the vehicle entirely prior to the crash. Dahl's testimony that he was unfamiliar with the shoulder and did not know that it was wide enough so that he could drive onto it without going into the ditch was uncontroverted. As the shoulder and the ditch were obscured by snow, there was nothing in the record to suggest that Dahl knew or should have known where the ditch began. Nor is there anything in the record to indicate that Dahl's failure to stop his vehicle was negligent, particularly since the Michael Ruppert vehicle was following only 40 feet behind on the slippery road.[1]

The trial court did not err in directing a verdict for Dahl. The isolated bits of testimony cited by the Rupperts are insufficient to create jury issues. A motion for directed verdict must be considered in light of all the evidence and if the evidence preponderates in favor of the moving party, the motion can be granted despite the fact that there is some evidence which, standing alone, would support a contrary verdict. See, e. g., Peckskamp v. McDowall, 282 Minn. 439, 165 N. W. 2d 254 (1969); Hanson v. Homeland Ins. Co. 232 Minn. 403, 45 N. W. 2d 637 (1951); Lee v. Smith, 253 Minn. 401, 92 N. W. 2d 117 (1958).

---

[1] Paradoxically, Michael Ruppert contends, as noted above, that Dahl was negligent for stopping at all, even when the impact with the Karl Ruppert vehicle forced him to do so.

■ Defendants argue that the trial court committed reversible error in refusing to allow them to comment upon the effect of the jury's answers to the special interrogatories. They wished to inform the jury that the percentage of causal negligence attributed to each defendant would determine the share of the judgment that each must eventually pay. At a conference in chambers prior to closing arguments, the trial court told counsel that they should make no such comments, as there could be no question of comparative negligence as to plaintiff, a passenger. The issue is controlled by Rules of Civil Procedure, Rule 49.01, which provides in relevant part:

"* * * Except as provided in Rule 49.01(2), neither the court nor counsel shall inform the jury of the effect of its answers on the outcome of the case.

"(2)    In actions involving Minn. Stat. 1971, Sec. 604.01, the court shall inform the jury of the effect of its answers to the percentage of negligence question and shall permit counsel to comment thereon, *unless the court is of the opinion that doubtful or unresolved questions of law, or complex issues of law or fact are involved, which may render such instructions or comment erroneous, misleading or confusing to the jury.*" (Italics supplied.)

We hold that the language of the rule gives the trial court substantial discretion to decide whether counsel may argue the effects of answers to interrogatories on payment of the judgment where the plaintiff could not have been negligent and the only issue is the responsibilities of the defendants inter se. There was no abuse of that discretion here. The trial court's refusal to permit counsel to take that step could not have affected the outcome of this case.[2]

---

[2] The Rupperts also suggest, in passing, that the trial court acted unfairly in permitting plaintiff's counsel to comment upon the effects of the answers while denying the same right to defense counsel. There is no merit to such an argument, as the trial court merely permitted plaintiff's counsel to inform the jury that plaintiff could not recover if the jury found that none of the defendants was negligent.

■ At the close of plaintiff's final argument, both defense counsel moved for a mistrial on the grounds that the closing argument of plaintiff's counsel was grossly inflammatory and prejudicial. The trial court denied the motions without comment. Defendants now contend that denial of the motion constituted reversible error.

The record reveals that counsel's argument did exceed the bounds of propriety. He commented upon plaintiff's good character and the hardships she had suffered in raising and supporting her children alone; he made a so-called "golden rule" argument, inviting the jury to ask themselves what damages they would wish if they had suffered plaintiff's injuries; he made disparaging remarks about opposing counsel, accusing one of them of having raised a "smoke screen"; he recounted some of his own medical experiences in an attempt to rebut some defense evidence.

Such excesses in closing argument are to be condemned and our opinion should in no way be read as condoning them. Nevertheless, we believe that the conduct of counsel was not so improper as to require a new trial in this case.

Whether a new trial should be granted for improper remarks of counsel in closing argument is committed almost entirely to the sound discretion of the trial court.[3] We have frequently held that prejudicial remarks in closing argument can be corrected by a curative instruction except in the case of the most extreme misconduct.[4] Specifically, we have held each type of misconduct

[3] See, e. g., Reese v. Ross & Ross Auctioneers, Inc. 276 Minn. 67, 149 N. W. 2d 16 (1967), and cases collected therein. Jacobs v. Draper, 274 Minn. 110, 142 N. W. 2d 628 (1966); Connolly v. The Nicollet Hotel, 258 Minn. 405, 104 N. W. 2d 721 (1960); Meagher v. Kavli, 256 Minn. 54, 97 N. W. 2d 370 (1959); 14A Dunnell, Dig. (3 ed.) § 7102, and cases therein cited.

[4] See, e. g., Kramer v. Kramer, 282 Minn. 58, 162 N. W. 2d 708 (1968); Ellwein v. Holmes, 243 Minn. 397, 68 N. W. 2d 220 (1955); State v. Becker, 231 Minn. 174, 42 N. W. 2d 704 (1950); Hinman v. Gould, 205 Minn. 377, 286 N. W. 364 (1939).

present here to be curable by proper curative instruction.[5] A request for such instructions is generally a prerequisite to obtaining a new trial on appeal.[6]

Here, defense counsel did not specifically object to the improper comments during plaintiff's counsel's closing argument and did not request curative instructions.[7] In the absence of such a request, we will not require a new trial despite the absence of specific curative instructions, for this is not the rare case where counsel's conduct is so egregious as to require the trial court to give curative instructions on its own motion.[8] Under the circumstances, we hold that the trial court committed no abuse of discretion.

■ Finally, appellants argue that the trial court erred in denying their motion for a new trial under Rule 59.01(7) of the Rules of Civil Procedure on the grounds that the $55,000 verdict was not justified by the evidence.[9] We note that the trial court is granted the broadest possible discretion in determining whether

[5] See, e. g., Marcum v. Clover Leaf Creamery Co. 225 Minn. 139, 30 N. W. 2d 24 (1947) (references to permanence of injury when there was no evidence to support claim of permanence); Colgan v. Raymond, 275 Minn. 219, 146 N. W. 2d 530 (1966) ("golden rule" argument on damages); Lott v. Davidson, 261 Minn. 130, 109 N. W. 2d 336 (1961) (appeals to sympathy).

[6] Patton v. Minneapolis St. Ry. Co. 247 Minn. 368, 77 N. W. 2d 433 (1956).

[7] The trial court did give a general, routine curative instruction of the sort referred to with approval in Kramer v. Kramer, 282 Minn. 58, 162 N. W. 2d 708 (1968), admonishing the jury to ignore counsel's recitation of the facts if it differed from their own recollections.

[8] See, e. g., Brabeck v. Chicago & N. W. Ry. Co. 264 Minn. 160, 117 N. W. 2d 921 (1962); Briggs v. Chicago G. W. Ry. 248 Minn. 418, 80 N. W. 2d 625 (1957); Weber v. McCarthy, 214 Minn. 76, 7 N. W. 2d 681 (1943).

[9] Appellants also claim that the verdict was the product of passion and prejudice, a state which they claim resulted from counsel's improper remarks in closing argument. In light of our resolution of the previous issue, we see no merit whatsoever to this claim.

a new trial should be granted for excessive damages.[10] We find no abuse of that discretion here. While the verdict may have been generous, there was sufficient evidence in the record to support it.

The evidence showed that Mrs. Bisbee suffered numerous injuries which rendered her unconscious for almost two days. Upon admission to the hospital she was in a state of shock. Her special damages at the time of trial totaled $7,500.

It appears that Mrs. Bisbee's injuries were of a serious and painful character. She suffered from a massive fracture dislocation of the foot which could not be reduced at the time she was hospitalized. Her face was severely bruised and cut, with a massive hematoma on one cheek. There was moderate to severe bruising on other parts of her body. She had several severe cuts on her legs. Some of her ribs were fractured. Her dentures were smashed and the inside of her mouth injured. After regaining consciousness she suffered from vomiting and severe pain for which she received medication. She was hospitalized for a total of 18 days immediately following the accident.

In October 1972, Mrs. Bisbee underwent bone graft surgery on the injured foot. This procedure required an additional 6 days of hospitalization.

At the time of trial, Mrs. Bisbee was still undergoing treatment for pains in her neck, head, and shoulders. One of her medical experts testified that she suffered from a permanent cervical strain, although another doctor expressed no opinion as to permanency. Her foot still caused pain and was frequently swollen. One of her medical experts testified that further surgery on the foot would be necessary and that she would still suffer from approximately 20-percent disability of the foot. She was no longer able to walk to and from work and had reduced her number of working hours from 8 1/2 or 9 to 5 per day.

---

[10] See, e. g., Brannan v. Shertzer, 242 Minn. 277, 64 N. W. 2d 755 (1954); Stacy v. Goff, 241 Minn. 301, 62 N. W. 2d 920 (1954).

50

In light of the seriousness of the injury and its residuals, we cannot say that the verdict was unsupported by the evidence.

Affirmed.