Leah MOLKENBUR, Appellant,

v.

·James F. HART, M.D., et al., Respondents.

No. C6–87–43.

Court of Appeals of Minnesota.

Sept. 1, 1987.

Gene P. Bradt, Mary Kay Kolar, Hansen, Dordell, Bradt, Odlang & Bradt, St. Paul, for appellant.

Kay Nord Hunt, John P. Lommen, Phillip A. Cole, Lommen, Nelson, Cole & Stageberg, Minneapolis, for respondents.

Heard, considered, and decided by HUSPENI, P.J., and WOZNIAK and CRIPPEN, JJ.

## OPINION

WOZNIAK, Judge.

Leah Molkenbur appeals from the judgment and order denying her motion for new trial in a medical malpractice case in which the jury found that respondents were not negligent. We affirm.

## FACTS

On December 13, 1980, after taking forty 25–milligram Elavil tablets, Leah Molkenbur informed her parents that she had overdosed. They took her to the St. Croix Valley Clinic. Dr. Quinn saw Leah immediately and placed her in an examining room with her mother and father so that he and a nurse could monitor her. After consulting medical texts for recommended treatment for Elavil overdoses, Dr. Quinn prescribed Ipecac syrup to induce vomiting and administered it within ten minutes of her arrival. Leah vomited soon after she ingested Ipecac, but later became somewhat incoherent and physically unbalanced. Dr. Quinn recognized signs of toxic poisoning and sent her to Lakeview Memorial Hospital.

Dr. Hart, who had experience with drug overdose cases, handled Leah's case when she reached Lakeview. Dr. Hart cared for Leah for about 40 to 50 minutes, while he performed a lavage (stomach pump) and inserted a breathing tube. He also tried several medications to reduce the toxicity effects, elevate her blood pressure, and slow her heart rate. He then made plans to transfer her to St. Paul Ramsey Hospital for more intensive care. He rode in the ambulance with her to St. Paul Ramsey.

Testimony indicated that prior to arriving at St. Paul Ramsey she never stopped breathing and had a blood pressure of at least 70. Shortly after arrival at St. Paul Ramsey, Leah had cardiac arrest. Her heart stopped for up to 30 minutes. She suffered anoxic encephalopathy (lack of oxygen to the brain causing brain damage).

Subsequently, Leah brought this action against Drs. Hart and Quinn, the St. Croix Valley Clinic, and Lakeview Memorial Hospital, claiming that they were negligent in their care and treatment of her on December 13, 1980. Lakeview Hospital was dismissed from the action prior to trial. After trial, the jury found that the respondents were not negligent in the treatment of appellant.

Appellant brought a post-trial motion for new trial, alleging many procedural and evidentiary errors. The trial court order denying this motion was accompanied by a thorough memorandum. Leah appeals.

## ISSUES

1. Did the trial court err in excluding the testimony of one of appellant's medical expert witnesses?

2. Did the trial court abuse its discretion in refusing to allow appellant to call another medical expert for rebuttal testimony?

3. Did the trial court err in its evidentiary rulings?

5. Did the trial court err in not intervening or granting a new trial based on closing argument by respondents' counsel?

6. Did the trial court err in the form of the special verdict?

## ANALYSIS

■ 1. Appellant argues the trial court erred in excluding the testimony of Dr. Joseph, one of her medical experts. The trial court has discretion to exclude expert medical testimony, and its ruling will not be reversed absent an erroneous view of the law or an abuse of discretion. *Reinhardt v. Colton*, 337 N.W.2d 88, 93 (Minn. 1983).

■ Here, the parties disputed whether Dr. Joseph was competent to testify. We do not reach the competency issue because Dr. Joseph's testimony was cumulative.

The offer of proof reveals that Dr. Joseph's statement would not have differed significantly from testimony already offered by appellant's medical expert, Dr. Smith. Dr. Joseph would have testified that respondents' conduct did not meet the national standard of care. He would have testified it was inappropriate to merely administer ipecac and wait, and that they should have immediately sent appellant to emergency, applied a cardiac monitor and then either given charcoal, intravenous, or gastric lavage. Appellant's medical expert, Dr. Smith, previously had testified similarly that the standard of care was not met and recommended the same conduct to which Dr. Joseph would have testified.

Where excluded testimony is cumulative, its rejection is not so prejudicial as to warrant reversal. *See Whitmore v. Fischer*, 397 N.W.2d 371, 378 (Minn.Ct.App.1986). Accordingly, the trial court did not err in refusing to allow his testimony.

■ 2. Appellant states that the trial court erred in refusing to allow her to call certain expert witnesses for rebuttal. Rebuttal evidence is that which explains, contradicts, or refutes the defendant's evidence. Proper rebuttal evidence is almost wholly in the discretion of the trial court. *Farmers Union Grain Terminal Association v. Industrial Electric Co.*, 365 N.W.2d 275, 277 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. June 14, 1985).

Appellant's offer of proof indicates that Dr. Saxena of St. Paul Ramsey would have testified regarding the use of sodium bicarbonate, that she never gave advice to Dr. Hart on the telephone, and that appellant's anoxia did not occur due to St. Paul Ramsey's negligence.

Regarding the sodium bicarbonate treatment, the trial court noted this testimony would be cumulative:

> [Appellant] introduced in her case in chief evidence regarding the use of sodium bicarbonate in drug overdose cases. In [respondents'] case in chief, their experts gave contradictory testimony regarding the use of sodium bicarbonate. Permitting [appellant] to have a rebuttal witness on this issue would have [been] cumulative, allowing [appellant] to reconfirm earlier testimony. Hence, such evidence would have been improper rebuttal.

We agree.

Secondly, regarding the telephone advice, Dr. Hart never testified that Dr. Saxena gave him advice on the telephone, so there was no need to rebut what had not been alleged.

Third, the testimony regarding St. Paul Ramsey's negligence is the most troublesome since this testimony goes to the probative issue of causation. Dr. Hart testified as an adverse witness during appellant's case-in-chief that a staff physician, rather than a "first or second year" resident, should have handled the case and that "things happened a bit fast." While appellant admits that the evidence was solicited during her case-in-chief, she states the evidence was surprise testimony and she was unable to contradict these statements before resting her case.

We first note that Dr. Saxena's testimony would have been more properly included in appellant's case-in-chief. She was in the

courtroom during Dr. Hart's testimony and apparently indicated a willingness to testify. Appellant should have called Dr. Saxena before resting her case; however, rebuttal testimony is not automatically excluded just because it would have been more properly admitted in the case-in-chief, *Farmers Union*, 365 N.W.2d at 277, and we do not affirm the trial court on that ground.

We do affirm the trial court's refusal to allow the rebuttal based on the testimony's cumulative nature. The failure does not amount to an abuse of discretion. Here, appellant's expert witness, Dr. Smith, testified after Dr. Hart in appellant's case-in-chief and directly refuted Dr. Hart's statement. Dr. Smith stated that St. Paul Ramsey acted within the prescribed standard of care. He further stated appellant's blood pressure and heart rate were normal when admitted to the clinic, but her low blood pressure, rapid heart beat and coma prior to admission at St. Paul Ramsey indicated anoxia occurred prior to any treatment by St. Paul Ramsey.

Later, in respondents' case-in-chief, Dr. Hart referred to appellant's low blood pressure and rapid heart beat while at Ramsey. Any inference made by Dr. Hart, however, had been directly and adequately refuted by Dr. Smith. Dr. Saxena's testimony as to St. Paul Ramsey's negligence was therefore cumulative. Further, the defense never alleged St. Paul Ramsey's negligence as a defense theory, either through pleadings or in closing argument before the jury. Accordingly, while it would have been better practice to allow rebuttal testimony on the issue of St. Paul Ramsey's negligence, the trial court did not abuse its discretion in refusing to admit cumulative rebuttal testimony.

3. Admissibility of Evidence. Evidentiary rulings on materiality, foundation, remoteness, relevancy, or the cumulative nature of testimony are within the trial court's discretion and will not be reversed absent a clear showing of abuse. *Jenson v. Touche Ross & Co.*, 335 N.W.2d 720, 725 (Minn.1983). The omitted evidence must reasonably tend to change the result of the trial before the exclusion warrants a new trial. *Id.*

A. Appellant argues the trial court erred in excluding as evidence Dr. Smith's testimony regarding the standard of care for drug overdoses after December 13, 1980. The trial court did not limit the questions put to Dr. Smith at trial, but rather requested that a question relate to the standard of care as of the date of the alleged malpractice. Certainly the relevant testimony was his opinion as to the standard of care at the time of the alleged malpractice. *See Kinning v. Nelson*, 281 N.W.2d 849, 854–55 (Minn.1979).

B. Appellant alleges that the trial court erred in refusing to allow Dr. Smith to testify regarding the authority of a particular article, entitled "Acute Poisoning Management Protocol," in *Post Graduate Medicine*. The trial court refused to allow the evidence because the article was published two years after the alleged malpractice. Appellant counters that the article was based on an Australian study in 1973; however, no evidence indicated that the Australian standard of care and treatment of Elavil overdoses in 1973 was similar to the standard of care and treatment of Elavil overdoses in Stillwater, Minnesota in 1980. Particularly in light of the expert testimony that the standard of care and treatment of the overdose differed in the same locale over a few years' time, the trial court did not err in refusing to admit evidence which might have demonstrated a higher standard of care and appropriateness of different treatment in 1982.

C. Appellant argues the trial court erred in limiting the cross-examination of Dr. Kingston. Respondents called Dr. Kingston, director of the Minnesota Poison Control Center, as an expert witness. He testified generally to the standard of care in 1980 for treating Elavil overdoses. Appellant's counsel attempted to question the witness on a 1977 article on the treatment of Elavil overdoses.

A treatise cannot be used for cross-examination unless its authority is established, either through reliance by the

expert during direct or reliance of any expert during the trial. Minn.R.Evid. 803(18); *see Sorensen v. Maski*, 361 N.W.2d 498, 501 (Minn.Ct.App.1985). Since neither Dr. Kingston nor *any other* expert in the lawsuit recognized this article as authoritative, the trial court properly refused to allow cross-examination based on it. *See McCormack v. Lindberg*, 352 N.W.2d 30, 34 (Minn.Ct.App.1984).

■ D. Similarly, the trial court did not err in preventing appellant from questioning Dr. Bialka about an article that he did not recognize as authoritative. Appellant argues that she was not using the article to prove the truth of the matter asserted, but for impeachment purposes. Questioning regarding medical articles for impeachment is appropriate only if the witness's opinion is based on the work or he recognizes the work as standard authority. *See Briggs v. Chicago, Great Western Ry.*, 238 Minn. 472, 494, 57 N.W.2d 572, 583 (1953).

■ 4. Appellant argues that the trial court committed error by not intervening in respondents' counsel's closing argument. The statement was made at the end of a critique of Dr. Smith in which counsel called him a "weak-kneed, lousy, Monday morning quarterback." This is intemperate language and counsel is admonished. However, it does not justify a reversal. On appeal, the trial court will not be reversed unless the conduct is so prejudicial that it would be a miscarriage of justice to permit the result to stand. *Anderson v. Rumsey*, 398 N.W.2d 670, 672 (Minn.Ct.App.1987), *pet. for rev. denied* (Minn. March 18, 1987). This argument was not so improper and prejudicial that the trial court abused its discretion by failing to intervene on its own motion to admonish counsel.

■ Proper procedure (except in egregious cases where the trial court acts on its own motion) is to make an objection at the close of argument, and normally prejudicial arguments can be corrected by a curative instruction. Here, appellant made no objection at the close of counsel's argument. The trial court is in a much better position than an appellate court to determine wheth-

er an improper remark or argument is materially prejudicial. Accordingly, a request for a curative instruction generally is needed to establish a basis for requesting a new trial. *Bisbee v. Ruppert*, 235 N.W.2d 364, 370 (Minn.1975). In *Bisbee*, the supreme court stated:

> In the absence of such a request, we will not require a new trial despite the absence of specific curative instructions, for this is not the rare case where counsel's conduct is so egregious as to require the trial court to give curative instructions on its own motion.

*Id.* at 370–71 (footnote omitted).

In denying appellant's motion for a new trial on this ground, the trial court stated: "In this case, the comment was not so prejudicial that it could not be corrected by a curative instruction." We agree.

■ 5. Finally, appellant argues that the trial court erred in drafting the special verdict form in a manner that required the jury to find a damage figure only if they found that the respondents' negligence directly caused appellant's injury. The jury instructions require the jury to find damages regardless of how the other questions are answered. *See Civ. JIG 151.* In this case, however, when the jury failed to find respondents negligent, the error is not prejudicial and does not require reversal.

## DECISION

The trial court is affirmed in all respects.