STATE v. FLOYD LAVERN PETERSON.

123 N. W. (2d) 177.

July 12, 1963—No. 38,564.

*Kenneth K. McMillan,* for appellant.

*Walter F. Mondale,* Attorney General, *Charles E. Houston,* Solicitor General, and *Wallace C. Sieh,* County Attorney, for respondent.

ROGOSHESKE, JUSTICE.

Defendant was charged with criminal negligence in the operation of a motor vehicle under Minn. St. 169.11, and he appeals from the judgment of conviction entered after a jury verdict of guilty.

One of defendant's companions, who was a passenger in his automobile, met death when defendant failed to negotiate a curve on U. S. Highway No. 16 some 10 miles east of Austin, Minnesota. This highway runs east and west, and the curve, which runs northerly at less than 90 degrees, was necessary in order to bypass a construction area which began at this point. Highway markings gave warning of the closing of the old highway, the existence of the curve, and the necessity to reduce speed to an absolute of 40 miles per hour. These markings appeared at periodic intervals commencing at least one-fifth of a mile before entering the curve. The old highway was in the process of reconstruction and the terrain extending from the curve was rough and uneven. Movable barricades restricted entrance upon the old highway and into the construction zone.

As defendant was returning to Austin with two companions shortly before 8 p. m. on December 8, 1960, defendant's car went out of con-

trol at the entrance of the curve. It crashed into two of the barricades and made tire marks of a sideslip nature for a distance of 287 feet, coming to rest next to a 48-foot utility pole located some distance northwesterly from the curve. The right rear of the automobile struck the pole at some point above the ground, cracking it at a point 8 to 12 feet above ground and loosening the part of the pole embedded in the ground. The automobile was extensively damaged, and decedent, who occupied the extreme right front seat, was thrown out and struck his head against a large dragline bucket located approximately 20 feet from where the automobile came to rest. The decedent's skull was fractured, lacerations of his brain were visible, and remains were also visible on the bucket. The foregoing physical facts were substantially without dispute.

Defendant's assignments of error raise questions of whether the evidence sustained a finding that he was guilty of gross negligence or reckless driving; whether the court erred in admitting opinions relating to his intoxication; and whether the county attorney was guilty of prejudicial misconduct in misstating the evidence in his closing argument.

Reviewing the evidence in the manner required under settled rules, the jury could find that the defendant, age 21, the deceased, Robert Aberg, age 22, and Robert Soiney, age 23, (all residents of Austin) journeyed some 50 miles to Rochester for the purpose of seeking employment. On their return from Rochester they stopped at the Municipal Liquor Store in Grand Meadow, arriving there sometime before 4 or 4:30 p. m. Grand Meadow is 20 miles east of Austin. The defendant and his companions remained in the liquor store, at the bar, until 7:30 p. m. During this period, their principal activity was drinking intoxicants, and defendant consumed a considerable quantity. His companions asked him to leave and defendant finally consented. As they were leaving, he tried to purchase a six-pack of beer but the bartender refused. The defendant was argumentative and displayed a belligerent attitude. The jury could reasonably infer that the bartender's refusal was based not only upon the defendant's attitude, as the bartender testified, but also because defendant's conduct and appearance

manifested intoxication. Shortly after they left the liquor store, the accident resulting in the death of Mr. Aberg occurred.

The record indicates that the defendant received only minor injuries from the accident and was examined and treated at the hospital by Dr. Leck, his attending physician who was not called upon to testify by either the state or the defendant. Defendant was also questioned by two highway patrolmen and the county coroner, Mr. George Stahl, while he was in the hospital. He was not charged or held by the officers but was released from the hospital and later, on January 7, 1961, an information charging him with criminal negligence was filed.

Both officers, whose police experience in the area covered 9 years and 4 years respectively, testified that when they questioned defendant at the hospital he exhibited signs of intoxication. They stated that his speech was slurred and confused; his eyes were glassy and staring; and they could detect liquor on his breath. Further, they observed that he was unsteady in his walk. Each was permitted, over objection, to express the opinion that defendant was intoxicated.

The county coroner expressed the same opinion. He did so after Dr. Anderson, a general surgeon called by defendant, testified that defendant had suffered multiple injuries including multiple pelvic fractures, a skull fracture, and extensive brain damage in a prior accident in 1958. From his examination in July 1959, he disclosed that these injuries resulted in permanent impairment of defendant's memory and caused him to walk with a staggering gait. Dr. Anderson gave his opinion that this prior condition would produce symptoms that would give the appearance to an observer that defendant was intoxicated, and that his prior brain damage caused lapse of memory. Dr. Stahl, the coroner, declared that he was aware of defendant's prior condition; nevertheless, over objection, he expressed the opinion that the defendant was intoxicated at the time he questioned him at the hospital.

■ Minn. St. 169.11, under which defendant was prosecuted, requires proof by the state that the defendant operated his vehicle in a reckless or grossly negligent manner. We have had occasion many times to define these words, and our examination of the court's charge leads

us to conclude that it adequately and comprehensively explained the terms and was wholly consistent with our prior decisions.[1]

Applying the statute as construed to the evidence favorable to conviction, we are obliged to hold that there is sufficient evidentiary support for the finding of the jury. It must be remembered that conviction under this statute must be sustained on review, even though in vital respects it rests on circumstantial evidence, where the sum of reasonable inferences drawn by the jury is consistent with the hypothesis that the defendant is guilty of the crime charged and is inconsistent with any rational hypothesis of innocence.[2] Although his surviving companion testified that defendant's driving was not affected, and the manager of the liquor store testified that in his opinion the defendant was not intoxicated, the factual circumstances before and after the tragedy were such that reasonable minds functioning judicially could permissibly infer that at the moment the defendant lost control of his automobile he was intoxicated. Defendant's only explanation of the cause of the accident was an unsupported claim that he was blinded by oncoming lights. He could recall nothing else about the facts immediately preceding the accident. In State v. Anderson, 247 Minn. 469, 476, 78 N. W. (2d) 320, 325, we said:

"* * * On a number of occasions we have held that driving a much-traveled highway while intoxicated may constitute gross negligence, creating criminal responsibility. State v. Brady, 244 Minn. 455, 70 N. W. (2d) 449; State v. Bolsinger, *supra* [221 Minn. 154, 21 N. W. (2d) 480]; State v. Kline, 168 Minn. 263, 209 N. W. 881."

While we are aware of the fact that this prosecution is directed against

---

[1] Reckless driving within the meaning of Minn. St. 169.11 has been defined as conscious and intentional driving which a driver knows, or should know, creates an unreasonable risk of harm to others even though there is no intent to do harm. Gross negligence within the meaning of § 169.11 has been defined as a heedless and palpable, though not intentional, violation of a legal duty respecting the rights of others. See, State v. Bolsinger, 221 Minn. 154, 21 N. W. (2d) 480.

[2] State v. Ewing, 250 Minn. 436, 84 N. W. (2d) 904; State v. Kaster, 211 Minn. 119, 300 N. W. 897; State v. Johnson, 173 Minn. 543, 217 N. W. 683.

one who happened to provide the means of travel to companions who were participants in a drinking party, and while the evidence in this record does not compare with some of the gross misconduct described in records covering similar tragedies, we are nevertheless required to conclude that the evidence is sufficient to sustain the conviction. Such matters are more properly to be considered in determining the sentence rather than the guilt or innocence of an accused. The jury could, and apparently did, find from the physical facts, the circumstances shown, and the direct testimony, and by drawing reasonable inferences therefrom, that defendant operated his automobile while he was intoxicated and at such speed and with such lack of lookout as to constitute reckless and grossly negligent driving within the meaning of the statute.

■ The determination of whether a proper foundation has been laid for admission of opinion evidence relating to intoxication rests within the discretion of the trial court.[3] Our examination of the record satisfies us that ample foundation existed for permitting both the officers and the doctor to express their opinions and that defendant's contention to the contrary underscores credibility rather than admissibility.[4] Dr. Anderson's testimony that defendant's prior condition could result in conduct symptomatic of intoxication in no way removes the foundation for the opinion. It is axiomatic that the credibility of the opinions was for the jury.

■ We are not impressed with defendant's claim that the county attorney was guilty of prejudicial misconduct in final argument because he urged the jury to find that defendant was intoxicated when he left the liquor store notwithstanding the contrary testimony of the employee of the store. Common experience does not permit one to be surprised if testimony by personnel associated with liquor establishments is influenced by self-interest. The county attorney's argument that the refusal

---

[3]State v. Simonsen, 252 Minn. 315, 89 N. W. (2d) 910; Clarke v. Philadelphia & Reading Coal & Iron Co. 92 Minn. 418, 100 N. W. 231; cf. Sullivan v. Brown, 225 Minn. 524, 31 N. W. (2d) 439; In re Estate of Cunningham, 219 Minn. 80, 17 N. W. (2d) 85.

[4]See State v. Simonsen, *supra*, where we have discussed the necessary foundation for opinion testimony regarding intoxication, i.e., observation of walking, standing, speech, eyes, face, and breath.

to sell defendant beer was because defendant was intoxicated at the time was not only reasonable but the inference was more consistent with probabilities than the contrary opinion expressed by the witness.

With the express permission of the court and over defendant's objection, the prosecution made rather extensive comments on defendant's failure to call his attending doctor as a witness. The jury was told that defendant failed to call Dr. Leck; that since he had treated defendant for injuries in a previous accident he was in the best position to testify regarding defendant's condition of sobriety when treated at the hospital. The jury was unquestionably urged to draw the inference that Dr. Leck's testimony would have contradicted defendant's declaration that he was not intoxicated.

The only foundation for these comments was the testimony of defendant's mother that Dr. Leck was defendant's attending physician and had knowledge of his condition following the prior accident and the accident in question. The state then asked her whether Dr. Leck would be called as a witness to which she answered, "I do not know." An objection was then made and sustained followed by a motion for a mistrial which was either abandoned or denied. There was no motion to strike. Defendant was not asked whether he asserted or waived the patient-physician privilege. At the close of the testimony, in response to defendant's objection, the court stated that "at no time before resting did the defense state to the Court, or state in the presence of the Court, that they did not intend to call Doctor Leck." The state was then permitted to comment on the failure to produce the doctor.

In view of the appearance of probable error, coupled with our responsibility to review the record even though the assignments of error are inadequate,[5] we ordered the parties to file additional briefs concerning the propriety of the court's ruling and the prosecution's argument although they were not specifically assigned as error.

The state does not concede error or prejudicial misconduct but insists that the ruling was in accord with our decisions and the procedure outlined in Dubois v. Clark, 253 Minn. 556, 93 N. W. (2d) 533, and Nelson v. Ackermann, 249 Minn. 582, 83 N. W. (2d) 500, both of

---

[5]Minn. St. 632.06; State v. Siebke, 216 Minn. 181, 12 N. W. (2d) 186.

which dealt with the problem in the context of a personal injury trial. We do not agree. We cannot escape the conclusion that prejudicial error was committed for the reason that the court's ruling permitting comment resulted from a misconception of the rule as applied in personal injury trials.

Assuming, as do the parties, that there should be no distinction between civil and criminal cases in resolving this problem, the pointed question is whether there was sufficient foundation to support an adverse inference. While it does appear that the privilege granted under Minn. St. 595.02(4) was available to defendant, it was not established that he directly or indirectly suppressed Dr. Leck's testimony. Defendant neither asserted the privilege[6] nor refused to assert or waive it upon demand of the state; and there was not an untimely disclosure of waiver rendering it impossible for the state to produce the doctor. The sole basis for permitting the adverse inference and the prosecution's comment was that defendant remained silent. Although a party suing for personal injuries is well advised, as suggested in Dubois v. Clark, *supra,* to make timely disclosure of his waiver of patient-physician privilege with respect to any medical witness not intended to be called to protect against the allowance of an unfavorable inference, this does not create a duty to do so. The duty rests upon the one who seeks the benefit of an adverse inference and who desires to comment in final argument to provide the necessary foundation. If this were a personal injury action where the burden to prove injury rested upon the one possessing the privilege, the mischief occasioned by the procedure which was followed might be obscured and perhaps nonprejudicial. But here, where defendant had no burden of persuasion on any issue, the effect of allowing an inference, and emphasizing its adverse character by permitting comment, was to suggest to the jury that defendant had some burden to prove that he was not intoxicated. We conclude that the foundation

---

[6]The court correctly prevented efforts to establish an assertion of the privilege by cross-examination of defendant's mother, as the privilege is personal to defendant. Maas v. Midway Chevrolet Co. 219 Minn. 461, 18 N. W. (2d) 233, 158 A. L. R. 215; Snyker v. Snyker, 245 Minn. 405, 72 N. W. (2d) 357.

for the adverse inference was insufficient and that prejudicial error requiring a new trial was committed in allowing the inference and permitting comment thereon.

Furthermore, we are not satisfied under the peculiar facts of this case, where the critical issue of the crime charged was intoxication, that an adverse inference should have been allowed even though a sufficient foundation were established. The issue is difficult and important and does not appear to have been answered by any of our previous decisions.[7] Mindful that the problem could possibly arise upon retrial, we nevertheless refrain from an analysis, deeming it to be beyond the scope of the issue presented and argued.[8]

Reversed and new trial granted.

---

[7]State v. Roby, 128 Minn. 187, 150 N. W. 793; State v. Virgens, 128 Minn. 422, 151 N. W. 190.

[8]See, McCormick, Evidence, c. 13, The Privilege Against Self-Incrimination.