STATE of Minnesota, Respondent,

v.

Euric ARDS, Appellant.

No. A11–1117.

Court of Appeals of Minnesota.

July 16, 2012.

Lori Swanson, Attorney General, Sara R. Grewing, St. Paul City Attorney, Tamara Larsen, Assistant City Attorney, St. Paul, MN, for respondent.

David W. Merchant, Chief Appellate Public Defender, Jessica Merz Godes, Assistant Public Defender, St. Paul, MN, for appellant.

Considered and decided by STAUBER, Presiding Judge; SCHELLHAS, Judge; and MUEHLBERG, Judge.*

## OPINION

SCHELLHAS, Judge.

Appellant challenges his convictions of second-degree driving while impaired (DWI) and second-degree driving with an alcohol concentration of .08 or more, arguing that the district court violated his right to a fair trial and that the evidence is insufficient to support his convictions. We affirm.

## FACTS

On December 5, 2010, at approximately 9:00 p.m., St. Paul Police Officer Tonya Tamm responded to a report of a pickup truck following a pedestrian on Flandrau Street in St. Paul. According to the report, the truck driver and the pedestrian were arguing. When Officer Tamm arrived at the location, she saw a pickup truck driving on Flandrau Street and a pedestrian walking on the sidewalk. Officer Tamm attempted to catch up to the truck, but when she was about a block behind it, the truck driver made a U-turn, revved the engine, and accelerated at a high rate of speed. At the time, Flandrau Street was ice- and snow-packed and very slippery. After accelerating, the truck fishtailed and moved "sideways down the middle of the street." Officer Tamm described the driving as "erratic" and believed that the truck driver was not driving reasonably under the conditions.

Officer Tamm initiated a traffic stop and, upon approaching the truck driver, observed that he was the only occupant, smelled strongly of the odor of alcohol, had bloodshot and watery eyes, and had slurred speech. Officer Tamm determined

the driver to be appellant Euric Ards, and Ards said that he had consumed five alcoholic drinks before driving. Officer Tamm asked the driver to step outside the truck, and she conducted a horizontal gaze nystagmus test (HGN), which detects one's rapid eye movement, to further assess whether the driver was alcohol impaired. Ards failed six out of eight indicators, and Officer Tamm arrested Ards. She did not perform additional field sobriety tests because of the slippery road conditions.

At the Ramsey County Law Enforcement Center, Officer Tamm read Ards the implied-consent advisory and he consented to provide breath samples for chemical testing. Officer Tamm, who is trained and certified to use the Intoxilyzer, administered the test. The Intoxilyzer functioned properly, including its performance of internal diagnostics to ensure proper function, and provided a control reading within an acceptable range. The reading from the first breath sample was .131, with a replicate reading of .132. The control reading was .083 and its replicate reading was .082. The reading from the second breath sample was .119, with a replicate reading of .121. Because the test result is based on the lowest of the four readings from the two breath samples, the Intoxilyzer reported Ards's alcohol concentration as .11.

Respondent State of Minnesota charged Ards with second-degree DWI and second-degree driving with an alcohol concentration of .08 or more, in violation of Minn. Stat. §§ 169A.20, subd. 1(1), (5), 169A.25, subd. 1(a) (2010). At the jury trial, the state offered Officer Tamm's testimony and the Intoxilyzer test results. Ards did not object.

---

At the conclusion of the state's case, Ards requested a directed verdict on the charge for driving with an alcohol concentration of .08 or more. Ards argued that the test results were insufficient to prove that his alcohol concentration was .08 or more because one of the control readings was outside of the acceptable variation range. The state argued that no evidence established that the test result was improper or unreliable if one of two control readings is not within the acceptable variation range. The district court denied Ards's request for a directed verdict, concluding that evidence of the test results was sufficient to present a fact question to the jury concerning the test's reliability. A jury found Ards guilty of both counts, and the district court imposed a sentence on the conviction of second-degree driving with an alcohol concentration of .08 or more.

This appeal follows.

## ISSUES

1. Is a police officer's testimony about an individual's alcohol impairment based on personal observation expert opinion testimony within the meaning of Minnesota Rule of Evidence 702?

2. Is the evidence sufficient to support the convictions of driving while impaired and driving with an alcohol concentration of .08 or more?

## ANALYSIS

### I. Admission of Police Officer's Testimony

Ards argues that the district court violated his right to a fair trial by allowing Officer Tamm to offer "expert opinion testimony" on the ultimate issue for the jury: that Ards was impaired in violation of Minnesota DWI laws. Ards also argues that the district court erred by allowing Officer Tamm to testify that the Intoxilyz-

er test result was reliable. This court will reverse a district court's evidentiary rulings only for a clear abuse of discretion. *Bernhardt v. State*, 684 N.W.2d 465, 474 (Minn.2004). Because Ards did not object to the district court's admission of the challenged testimony, this court reviews the district court's decision for plain error. *State v. Griller*, 583 N.W.2d 736, 740 (Minn.1998). Ards therefore "must show that the district court's failure to sua sponte exclude the testimony at issue constituted (1) an error; (2) that was plain; and (3) that affected [Ards's] substantial rights." *State v. Medal–Mendoza*, 718 N.W.2d 910, 919 (Minn.2006).

### A. Testimony About Impairment

■ Ards asserts that Officer Tamm's testimony about his impairment was expert testimony because the state offered evidence of Officer Tamm's "specialized training" and "experience." Officer Tamm testified that she underwent the standard week-long training for police officers to learn how to detect impaired drivers and administer standard field sobriety tests and, during her seven years as a police officer, had been involved in over 100 arrests or investigations concerning DWI offenses. Ards argues that the district court erred by admitting Officer Tamm's testimony about his impairment because it was expert testimony within the meaning of Minnesota Rule of Evidence 702 and went to the ultimate issue for the jury—whether Ards was impaired when he drove. The state asserts that Officer Tamm did not testify about Ards's impairment as an expert witness.

Ards's argument that Officer Tamm's impairment testimony was "expert opinion testimony" is unavailing. Officer Tamm testified about her personal observations of Ards. The Minnesota Supreme Court has long recognized that a layperson may

testify as to her opinion about a person's intoxication and that the issue is "hardly a question for expert testimony." *McKillop v. Duluth St. Ry. Co.*, 53 Minn. 532, 537, 55 N.W. 739, 739 (1893) (reversing for new trial because court excluded "opinions of the witnesses that plaintiff was intoxicated"). Simply because Officer Tamm has specialized training and experience did not convert her impairment testimony to expert testimony, thereby preventing her from offering her opinion about whether Ards was impaired.

In *State v. Simonsen*, 252 Minn. 315, 328, 89 N.W.2d 910, 918 (1958), the Minnesota Supreme Court described the foundation necessary for layperson opinion testimony of intoxication to be admissible as "observation of manner of walking and standing, manner of speech, appearance of eyes and face, and odor, if any, upon such person's breath." When sufficient foundation is laid, a layperson's and police officer's opinion testimony of a defendant's intoxication is admissible. *See State v. Elmourabit*, 373 N.W.2d 290, 291–93 (Minn.1985) (considering sufficiency of evidence in conviction of DWI when evidence included opinion testimony of two police officers that defendant was under the influence of alcohol); *State v. Hicks*, 301 Minn. 350, 354, 222 N.W.2d 345, 348 (1974) (holding that absence of one indicator of intoxication does not render layperson's observations insufficient to offer opinion testimony about defendant's intoxication); *State v. Peterson*, 266 Minn. 77, 80, 82, 123 N.W.2d 177, 180–81 (1963) (holding sufficient foundation exists for police officers to offer opinion testimony about defendant's impairment); *see also State v. Provost*, 490 N.W.2d 93, 102 (Minn.1992) (noting that "[o]pinion testimony on a person's blood alcohol content and on the fact of intoxication is admissible," but Minnesota case-law concerning specific-intent crimes makes clear that expert psychiatric opinion testimony on "whether defendant's intoxi-

cation has rendered the defendant incapable of forming the requisite mens rea" is inadmissible).

Significantly, in alcohol-related offenses, "[t]he opinion of a layperson or an officer as to intoxication, assuming sufficient foundation has been laid, is often helpful." *Sarb v. Comm'r of Pub. Safety*, 362 N.W.2d 405, 406 (Minn.App.1985). Our research does not reveal, and Ards provides no authority to support, that the standard Minnesota courts apply to admission of a police officer's opinion testimony about an individual's intoxication is different from the standard that courts apply to admission of a layperson's opinion testimony. *See, e.g., Romero v. City of Richfield*, 253 N.W.2d 152, 153 (Minn.1977) (holding district court did not err by permitting opinion testimony by police officers about plaintiff's intoxication in negligence action); *Peterson*, 266 Minn. at 80, 82, 123 N.W.2d at 180–81 (permitting opinion testimony in criminal prosecution of defendant's intoxication based on observations of defendant by officers with police experience of nine and four years).

In *State v. Koppi*, 798 N.W.2d 358, 362 (Minn.2011), a chemical-test-refusal case, the Minnesota Supreme Court noted that "because an officer's training and experience is the lens through which the factfinder must evaluate the reasonableness of an officer's determination of probable cause, probable cause incorporates the individual characteristics and intuitions of the officer to some extent." But the court did not characterize an officer's testimony as expert testimony. In this case, at trial, the state made no proffer for expert testimony by Officer Tamm, neither party referred to Officer Tamm as an expert witness, and neither party requested that the district court instruct the jury about its consideration of expert-witness testimony. Our review of the record does not support

Ards's characterization of Officer Tamm's testimony about his impairment as being expert opinion testimony within the meaning of Minnesota Rule of Evidence 702.

Ards argues that expert testimony is not generally admissible on whether a defendant is under the influence of alcohol but offers no authority to support his argument. He cites three cases in which the *defendant's* proffered expert opinion testimony on the general *effect* of alcohol consumption as it related to an element of the charged offense was excluded. *See State v. Greenleaf,* 591 N.W.2d 488, 494, 504 (Minn.1999) (upholding first-degree murder conviction); *State v. Frank,* 364 N.W.2d 398, 399–400 (Minn.1985) (upholding rape conviction); *State v. Fratzke,* 354 N.W.2d 402, 404, 408–09 (Minn.1984) (upholding first-degree murder conviction). In *Greenleaf* and *Fratzke,* the supreme court addressed whether the defendant's degree of intoxication precluded the intent requisite for murder. *See* 591 N.W.2d at 504, 354 N.W.2d at 408–09. In *Frank,* the supreme court addressed whether the victim's degree of intoxication prevented her from withholding consent. *See* 364 N.W.2d at 399–400. These cases are inapplicable here.

■ Because we conclude that Officer Tamm's opinion testimony about Ards's impairment was not expert opinion testimony, we consider whether proper foundation existed for the district court to otherwise admit the testimony. Ards does not dispute this issue. " '[T]raditionally the foundation required before an opinion regarding intoxication can be given has been testimony concerning observation of manner of walking and standing, manner of speech, appearances of eyes and face, and odor, if any, upon such person's breath.' " *Hicks,* 301 Minn. at 353, 222 N.W.2d at 348 (quoting *Simonsen,* 252 Minn. at 328, 89 N.W.2d at 918).

Here, Officer Tamm testified that she observed that Ards drove erratically, smelled of alcohol, and had bloodshot and watery eyes and slurred speech. He also admitted to her that he consumed five alcoholic drinks before driving. After providing testimony of her personal observations, Officer Tamm testified that her observations led her to determine that Ards was "impaired." Officer Tamm's testimony shows that she observed several indicia of intoxication, which established the foundation necessary to testify as to her opinion about Ards's intoxication. We therefore conclude that the district court did not err by admitting Officer Tamm's opinion testimony about Ards's impairment.

Ards also challenges the admission of Officer Tamm's opinion testimony that Ards was "in violation of Minnesota DUI laws" as inadmissible expert testimony under Minn. R. Evid. 702 because she told the jury what result to reach. In response to the prosecutor's request that she explain the implied-consent advisory to the jury, Officer Tamm said that "[t]he Implied Consent Advisory is advising—I advised [Ards] that he was in violation of Minnesota DUI laws, and he was placed under arrest for that offense." The implied-consent advisory was relevant because the state offered into evidence the results of the chemical test to which Ards submitted upon Officer Tamm's request. To require that a driver submit to a chemical test, a police officer must have probable cause to believe a person was driving while impaired. Minn.Stat. § 169A.51, subd. 1(a), (b) (2010). And, here, to comply with the implied-consent advisory, Officer Tamm must have notified Ards that he had been lawfully placed under arrest for violation of Minn.Stat. § 169A.20, driving while impaired. *See id.,* subds. 1(b)(1), 2 (2010) (identifying this precondition for requirement of chemical test and implied-consent advisory requirements).

In cases involving the prosecution of DWI charges, the state routinely offers evidence about the implied-consent advisory through an officer's testimony that she read the implied-consent advisory to the suspect and by offering the written advisory into evidence. *See, e.g., State v. Ouellette*, 740 N.W.2d 355, 360 (Minn.App.2007) (stating officer testified that he read the implied-consent advisory and a copy of the advisory was admitted into evidence and holding in refusal-to-test charge that state must prove defendant was lawfully arrested and implied-consent advisory was read to him), *review denied* (Minn. Dec. 19, 2007); *State v. Aschnewitz*, 483 N.W.2d 107, 109 (Minn.App.1992) (considering evidence that officer read implied-consent advisory to defendant). That an arresting officer holds an opinion that a driver was impaired is evidence the jury routinely receives through testimony about the implied-consent advisory or admission of the written advisory.

■ In this case, Officer Tamm's opinion testimony about Ards's alcohol impairment was based on her personal observation of Ards and was helpful to the jury in understanding the implied-consent advisory, the subsequent chemical testing, and the test results. *See* Minn. R. Evid. 701 (stating that layperson opinion testimony is admissible when it is "rationally based on the perception of the witness and ... helpful to a clear understanding of the witness' testimony or the determination of a fact in issue"); Minn. R. Evid. 704 ("Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."). We therefore conclude that the district court did not err by admitting this testimony.

### B. Testimony About Intoxilyzer

■ Ards argues that the district court erred by admitting Officer Tamm's testimony that the Intoxilyzer test result was reliable. He claims that the testimony was inadmissible under Minn. R. Evid. 702 because it told the jury "what result to reach" on an ultimate issue. We disagree. As we previously stated, we reject Ards's characterization of Officer Tamm's testimony as "expert opinion testimony." Moreover, the state was not required to offer expert testimony about the reliability of the Intoxilyzer. *See* Minn.Stat. § 634.16 (2010) (stating that breath test results are admissible without "antecedent expert testimony" of the approved breath-test instrument's reliability when the test is being administered by a trained person). The state merely needed to offer evidence that Officer Tamm was fully trained in the use of the Intoxilyzer, *see id.*, and it did so.

Layperson opinion testimony is admissible when it is "rationally based on the perception of the witness and ... helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Minn. R. Evid. 701. For the jury's consideration of whether Ards drove with an alcohol concentration of .08 or more, the district court instructed the jury to evaluate the Intoxilyzer's method and results and to determine the weight to give the results. *See* 10A *Minnesota Practice,* CRIMJIG 29.10 (2006) (identifying that jury instruction for driving with alcohol concentration of .08 or more includes instructing jury that reliability of test is issue for jury in determining weight to be given to evidence). Officer Tamm's testimony that the Intoxilyzer would have indicated whether there were any problems with the reliability of the test result was rationally based on her perceptions and was helpful to the jury in understanding the testing method, the machine's operation, and the test results so that the jury could weigh the breath-test evidence.

We conclude that the district court did not err by admitting Officer Tamm's testimony and that the court therefore did not deprive Ards of a fair trial.

## II. Sufficiency of the Evidence

The jury found Ards guilty of second-degree DWI and second-degree driving with an alcohol concentration of .08 or more.[1] Ards challenges the sufficiency of the evidence of both convictions.

> In assessing the sufficiency of the evidence, [an appellate court] view[s] the evidence in a light most favorable to the verdict to determine whether the facts in the record and the legitimate inferences drawn from them would permit the jury to reasonably conclude that the defendant was guilty beyond a reasonable doubt of the offense of which he was convicted.

*State v. Hanson,* 800 N.W.2d 618, 621 (Minn.2011) (quotations omitted). The reviewing court "must assume the jury believed the state's witnesses and disbelieved any evidence to the contrary." *State v. Caldwell,* 803 N.W.2d 373, 384 (Minn.2011) (quotation omitted).

### A. DWI

■ To support a conviction of DWI, the state must prove beyond a reasonable doubt that Ards drove his vehicle while under the influence of alcohol. *See* Minn. Stat. § 169A.20, subd. 1(1) (stating elements of DWI offense). A person is "under the influence" when a person does not "possess that clearness of intellect and control of himself that he otherwise would have." *State v. Teske,* 390 N.W.2d 388, 390 (Minn.App.1986) (quotation omitted). The state must show that "the driver had drunk enough alcohol so that the driver's ability or capacity to drive was impaired in

some way or to some degree." *State v. Shepard,* 481 N.W.2d 560, 562 (Minn.1992).

■ We have previously described the evidence in this case. Viewing the evidence in the light most favorable to the guilty verdict, the evidence is sufficient for the jury to have reasonably concluded beyond a reasonable doubt that Ards's driving was impaired by the influence of alcohol. We reject Ards's argument that this case is analogous to *Elmourabit,* in which the Minnesota Supreme Court reversed a DWI conviction because the state's evidence fell "short of proof beyond a reasonable doubt." 373 N.W.2d at 294. The *Elmourabit* court noted the "unique facts and circumstances," including that defendant admitted to drinking "only one beer and a few sips of another," and

> was driving 13 miles over the speed limit, but this is not uncommon for sober drivers too. There was an odor of alcohol, but the recent drinking of one bottle of beer may leave an odor of alcohol on the breath. Defendant's speech was at times slurred, but English is not his native tongue. There was testimony of some lack of coordination, but the video-taped dexterity tests showed none. There was evidence of glassy, bloodshot eyes, but also evidence of a heightened hyperventilative state. There was evidence defendant was not having a heart attack, but neither could the officers nor the paramedics say authoritatively that defendant had no medical problems or was not experiencing pain.

*Id.* at 293. Because the defendant did not submit to testing, the record contained no evidence of his alcohol concentration. *Id.* at 291. The court noted that the case would have "little precedential value," and reiterated that generally, jury verdicts will

---

1. Ards stipulated to two prior DWI convictions. *See* Minn.Stat. §§ 169A.03, subd. 3(1) (identifying aggravating factors), 169A.25, subd. 1(a) (stating aggravating-factor requirement for second-degree DWI) (2010).

not be set aside save for the "rare exception." *Id.* at 293–94. Unlike *Elmourabit*, the case before us does not present the rare exception. Ards admitted to consuming five alcoholic drinks before driving and submitted to testing, which revealed an alcohol concentration over the legal limit.

## B. Driving with an Alcohol Concentration of .08 or More

■ To support a conviction of driving with an alcohol concentration of .08 or more, the state must prove beyond a reasonable doubt that Ards drove his vehicle with an alcohol concentration, as measured within two hours of driving, of .08 or more. *See* Minn.Stat. § 169A.20, subd. 1(5) (stating elements of offense). The state offered evidence of the Intoxilyzer test results, which revealed that Ards had an alcohol concentration of .11.

■ "The proponent of a chemical or scientific test must establish that the test itself is reliable and that its administration in the particular instance conformed to the procedure necessary to ensure reliability." *State v. Dille*, 258 N.W.2d 565, 567 (Minn.1977). The results of a breath test, when performed by a trained person, are admissible without expert testimony that an "approved breath-testing instrument provides a trustworthy and reliable measure of the alcohol in the breath." Minn.Stat. § 634.16. "Once a prima facie showing of trustworthy administration has occurred, it is incumbent on the opponent to suggest a reason why the test was untrustworthy." *Bond v. Comm'r of Pub. Safety*, 570 N.W.2d 804, 806 (Minn.App.1997) (quotation omitted). Rebuttal of the state's prima facie showing of admissibility of Intoxilyzer results requires more than "speculation that something might have occurred to invalidate those results." *Hounsell v. Comm'r of Pub. Safety*, 401 N.W.2d 94, 96 (Minn.App. 1987).

■ The state made a prima facie showing as to the trustworthiness and reliability of the Intoxilyzer results and presented evidence from which the jury could infer that the test method and the result were reliable. Officer Tamm testified that she is certified to conduct the test using the Intoxilyzer 5000, and that the machine functioned properly, performed internal diagnostic testing, provided an acceptable control reading, provided two readings above .08, and provided two replicate readings above .08 within the acceptable variation range. The state also offered corroborating evidence of the failed HGN test and Officer Tamm's observations of impairment. The burden therefore shifted to Ards to show why the test was not reliable. Ards neither objected to the admission of the test results nor offered evidence to rebut the state's prima facie showing of reliability.

Ards does not challenge the admissibility of the test; he challenges only the sufficiency of the test results to prove guilt beyond a reasonable doubt. *See State v. Birk*, 687 N.W.2d 634, 639 (Minn.App.2004) (recognizing that "there are cases in which the *admissibility* of the Intoxilyzer test has been confused with the *sufficiency* of the test to prove guilt beyond a reasonable doubt"). "Although the reliability of the testing method and results is a foundational question to be decided by the court in determining admissibility, once admitted into evidence, the reliability of the test is also an issue for the jury in determining the weight to be given to the evidence." CRIMJIG 29.10 (citations omitted); *see also Hounsell*, 401 N.W.2d. at 96 (clarifying that because defendant did not object to admission of test results, his challenge is to "the weight to be accorded those results"). Making credibility determinations and weighing evidence are tasks reserved to the jury. *State v. Washington*, 521 N.W.2d 35, 42 (Minn.1994). "Our sys-

tem of justice assumes that juries that are properly instructed will weigh the evidence, determine the credibility of witnesses, and reach the appropriate verdict." *State v. Dahlin*, 695 N.W.2d 588, 596 (Minn.2005). The district court properly instructed the jury to evaluate the testing method and results: "You must evaluate the reliability of the testing method and the test results in determining whether the defendant's alcohol concentration was 0.08 or greater within two hours of the time of driving." *See* CRIMJIG 29.10 (stating jury instruction for driving with an alcohol concentration of .08 or more).

Ards's arguments about why the test was not reliable and the evidence therefore insufficient to support his conviction are unavailing. First, Ards argues that "the state did not meet its burden to establish the reliability of the Intoxilyzer test results" because one of the control readings was .083, which is outside of the acceptable range. But one of the control readings was .082, which Officer Tamm testified is within the acceptable range. No evidence in the record establishes that one control reading outside of the acceptable range invalidates the test.

Second, Ards argues that the test's reliability is undermined because the replicate readings differ from the first readings. The reading from the first sample was .131, with a replicate reading of .132, and the reading from the second sample was .119, with a replicate reading of .121. Officer Tamm testified that variation in the readings is common and expected, that no errors occurred in running the test, and that the machine functioned properly. No evidence demonstrates that the variation invalidates the test.

Third, Ards contends that the test was not reliable because Officer Tamm "did not properly observe [him] for 15–20 minutes prior to the Intoxilyzer test." Ards points to no evidence in the record that affirma-

tively supports this contention. He points only to a lack of testimony by Officer Tamm about her observation of him before conducting the test. But neither the state nor Ards asked Officer Tamm any questions about the observation period. Thus, Ards offers nothing more than mere speculation that Officer Tamm did not observe Ards for 15–20 minutes prior to conducting the test. *See DeBoer v. Comm'r of Pub. Safety*, 406 N.W.2d 43, 45 (Minn.App.1987) (stating that in challenging observation period, duty of producing evidence lay with defendant).

We conclude that the evidence was sufficient for the jury to infer that the testing method and result were reliable and that the evidence was sufficient for the jury to reasonably conclude beyond a reasonable doubt that Ards's alcohol concentration was .08 or more within two hours of driving.

## DECISION

A police officer's testimony about an individual's alcohol impairment based on personal observation is not expert opinion testimony within the meaning of Minnesota Rule of Evidence 702 and is admissible. Because Ards received a fair trial and sufficient evidence supports his convictions of second-degree driving while impaired and second-degree driving with an alcohol concentration of .08 or more, we affirm.

**Affirmed.**