*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0811**

State of Minnesota,
Respondent,

vs.

Daniel Paul Wateski,
Appellant.

**Filed December 7, 2015
Affirmed
Rodenberg, Judge**

Houston County District Court
File No. 28-CR-13-892

Lori Swanson, Attorney General, Matthew Frank, Assistant Attorney General, St. Paul, Minnesota; and

Samuel D. Jandt, Houston County Attorney, Caledonia, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Bradford Colbert, Assistant Public Defender, Joseph Bergstrom (certified student attorney), St. Paul, Minnesota (for appellant)

Considered and decided by Reyes, Presiding Judge; Connolly, Judge; and Rodenberg, Judge.

**U N P U B L I S H E D   O P I N I O N**

**RODENBERG**, Judge

Appellant Daniel Paul Wateski challenges his convictions of first-degree driving while impaired, driving without a valid Minnesota driver's license, and driving after

cancellation (inimical to public safety), arguing that alleged evidentiary errors warrant a new trial and that the district court committed plain error by failing to instruct the jury concerning the corroboration requirement for accomplice testimony. We affirm.

## FACTS

This appeal follows appellant's conviction of multiple offenses arising from his activities on the evening of November 1 and early into the morning of November 2, 2013. Appellant and A.D., together with a third companion, D.S., spent time at a restaurant and then at a strip bar. Appellant admits that he drank heavily over the course of the evening. A.D. drove appellant's mother's car to the restaurant, from the restaurant to the strip bar, and from the strip bar to D.S.'s home, where D.S. got out of the car and went inside.

The parties dispute what happened next in D.S.'s driveway. The state presented evidence in the form of A.D.'s testimony that appellant became angry and ordered A.D. to get out of the driver's seat, that appellant got into the driver's seat, that A.D. got back into the car on the passenger's side for fear of being left behind, and that appellant took control of the vehicle, backing out of the driveway and into the ditch. Appellant insinuates without actually alleging that A.D. remained in the driver's seat after the pair left D.S.'s home, and that it was she who drove the vehicle backwards out of the driveway and into the ditch. The car was parked on the side of the road, partially encroaching on the travelled portion of the lane, a short distance from where it went into the ditch.

A.D. testified at trial that appellant became angry and agitated in D.S.'s driveway and that he remained so during the few minutes of contested events. A.D. alleges that the

2

altercation started because she did not want appellant to drive. A.D. claims that they yelled at each other, that she threw an empty pop can at appellant's head, and that they both hit each other in the face. She claims that appellant started driving, and that he drove very fast, starting and stopping abruptly, and that he was driving when the car went into the ditch. She testified that the altercation started in D.S.'s driveway and lasted until they were standing on the roadway at the place where the car, damaged because of having apparently hit a mailbox, was ultimately left. Appellant left the scene on foot. A.D. called 911 shortly after 2:00 a.m. while standing on the side of the county road near the car, and she gave her version of the preceding events to the dispatcher. A.D. sent a text message shortly after her 911 call indicating that appellant had "f---ed up" and that "[A.D.] was not going to get another DUI out of it just because of [appellant]." A.D.'s father picked her up and brought her to his house, where A.D. was temporarily staying. Police arrived and eventually interviewed A.D. at her father's home.

Appellant argues that the evidence is insufficient to prove that he drove the car that night, and that A.D. has fabricated her testimony to protect herself. No one other than appellant and A.D. witnessed the events after D.S. was dropped off.[1]

R.J. called appellant's brother, E.W., for help to recover the vehicle from the side of the county road. Appellant was eventually found at some time after 3:00 a.m., sleeping on the couch at the home of E.W., which is within reasonable walking-distance of where the car had been left. A responding police officer met with appellant and

---

[1] The car that appellant and A.D. were using belonged to appellant's mother, R.J., who had given A.D. permission to drive it on this occasion and regularly in the past. R.J. is a co-worker of A.D. and the next-door neighbor of A.D.'s father.

observed indicia of intoxication, including a smell of an alcoholic beverage on his breath, and red, watery eyes. Appellant also stated after brief questioning that he was "drunk as a skunk." Appellant was arrested and booked into jail, where he produced an intoxilyzer result of 0.10 at 4:37 a.m.

The state argued at trial that appellant did not consume alcohol at any point after leaving the strip bar at about 12:30 a.m. and before taking the intoxilyzer test about four hours later. E.W., who stated that he had not been aware of appellant's presence in his house until he came downstairs, testified that appellant would not have found any alcohol in the house. And no one claimed that alcohol was consumed in the car after leaving the strip bar.

Appellant was charged with first-degree driving while impaired, first-degree driving with an alcohol concentration of 0.08 or more within two hours, driving without a valid Minnesota driver's license, driving after cancellation (inimical to public safety), and fifth-degree assault. The district court dismissed the charge of first-degree driving with an alcohol concentration of 0.08 or more within two hours. The remaining charges were tried to a jury. Appellant stipulated before trial that he had prior qualified impaired-driving convictions and that, if convicted of driving while impaired, he would be guilty of a first-degree offense because of his prior convictions. The jury found appellant not guilty of fifth-degree assault, but guilty of the remaining charges.

Appellant was initially sentenced to 66 months in prison with credit for time served. Following appellant's appeal, which was stayed and remanded for post-

4

conviction relief, the district court recalculated appellant's criminal history score and reduced his sentence to 52 months in prison. Appellant then reinstated his appeal.

## DECISION

### I. Evidentiary rulings

Appellant argues that the district court made three erroneous evidentiary rulings. A district court's evidentiary rulings generally will not be disturbed on appeal unless the ruling demonstrates a clear abuse of discretion. *State v. Nunn*, 561 N.W.2d 902, 906-07 (Minn. 1997). On this record, and to the extent that there were evidentiary errors at all, we conclude that they were harmless.

#### a. Flashing evidence

Appellant challenges the district court's exclusion of testimony that A.D. flashed her breasts at the strip bar, arguing that such testimony was relevant to his theory that A.D. drove the car while intoxicated and then framed appellant to avoid legal trouble.

Evidence is relevant if it has any tendency to make a fact of consequence more or less probable. Minn. R. Evid. 401. The Minnesota Rules of Evidence also provide that evidence, although relevant, "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Minn. R. Evid. 403.

It appears from the record (or the lack of a record on this specific subject) that the district court's pretrial decision to exclude this testimony was handled largely off the record. The transcript contains the district judge's brief statement that "the court is satisfied that in today's society, [the fact that a woman exposes her breasts] isn't

5

necessarily an indicator of alcohol consumption," and the judge then instructed the attorneys to tell their witnesses not to make any reference to the alleged flashing.

The lack of a more thorough record of the district court's analysis of this issue leaves us with questions concerning whether that analysis was properly tethered to rule 403. The district court considered the probative value of the proposed testimony, but it is not clear that it specifically weighed probative value against the danger of unfair prejudice. Rule 403 requires that the probative value of a given piece of evidence must be "substantially outweighed by the danger of unfair prejudice" in order for a court to properly exclude it. The district court appears to have implicitly determined that the flashing evidence might have some (if not dispositive) logical relevance under rule 401 concerning whether A.D. was drinking alcohol, but that the logical relevance was outweighed by other rule-403 considerations.

Regardless of whether the district court fully and properly applied rule 403, we are unable to conclude on this record that the district court reversibly erred. The district court found the proffered evidence to have minimal probative value and implicitly concluded that the allegation that a witness flashed her breasts would be substantially more prejudicial than probative on the relevant issues. There was other, and seemingly more persuasive, evidence of A.D.'s alcohol consumption from witnesses who saw her drinking. And A.D. admitted to drinking two beers, but denied witnesses' claims that she drank more than that. In context, the flashing evidence would likely have added nothing of significant value for the jury's consideration. It would have been a waste of time,

needlessly cumulative, and marginally relevant, in addition to being unfairly prejudicial. *See* Minn. R. Evid. 403.

### b. Prior DWI evidence

Appellant argues that the district court erred in sustaining the state's objection to evidence of A.D.'s prior DWI conviction. The district court ruled that the probative value of the evidence was outweighed by its prejudicial effect. We review the district court's application of the rules of evidence for abuse of discretion. *State v. Griller*, 583 N.W.2d 736, 743 (Minn. 1998).

Rule 616 of the Minnesota Rules of Evidence allows the admission of evidence, including extrinsic evidence, to show bias, prejudice, or interest "for the purpose of attacking the credibility of a witness." Minn. R. Evid. 616; *see also* Minn. R. Evid. 616 1989 comm. cmt. However, rule 609 bars impeachment by evidence of prior convictions, except in certain prescribed classes of crimes, which the parties agree do not encompass A.D.'s prior DWI. Minn. R. Evid. 609. In general, rule 608(b) bars the use of extrinsic evidence to prove specific instances of conduct "for the purpose of attacking or supporting the witness' character for truthfulness." Minn. R. Evid. 608(b); *see also* Minn. R. Evid. 608(b) 2006 advisory comm. cmt.

The parties agree that evidence of A.D.'s past DWI conviction cannot be admitted for impeachment purposes under rule 609. But appellant argues that the conviction and related questioning would have shown A.D.'s bias or interest and was admissible under rule 616. The district court excluded the proffered evidence because under rule 403 "the probative value would be outweighed by the prejudicial value." Minn. R. Evid. 403.

Although the rule requires that the district court consider whether the probative value is "*substantially* outweighed by the danger of unfair prejudice" (emphasis added), we see no abuse of the district court's discretion here. Appellant's theory at trial was that he was not driving, that A.D. was the driver at all relevant times, and that A.D.'s claim that he was driving arose from her desire to avoid conviction for DWI. Evidence of A.D.'s alcohol consumption was admitted at trial and the impact of that evidence on her credibility was fully argued. Whether A.D. had or did not have an earlier DWI conviction added very little respecting her bias.

Moreover, while the district court ruled that all evidence of A.D.'s past DWI conviction was inadmissible, the fact inadvertently came out through the testimony of R.J. (appellant's mother) during direct examination by the state. R.J. stated that A.D. sent her a text message stating "[A.D.] was not going to get another DUI out of it just because of [appellant]." The prosecutor objected and sought to have the statement stricken from the record, but the court overruled stating, "You asked the question, she answered it." The district court later prohibited further targeted questioning on the issue of A.D.'s past DWI conviction, but confirmed that the testimony of R.J. was not stricken and was part of the record.

Even if the district court erred in ruling that evidence of A.D.'s earlier DWI was inadmissible (which we do not conclude that it did), any error was harmless because evidence of the prior DWI was received in any event.

8

### c.     Officer's testimony

Appellant argues that the district court erred by allowing the jury to hear, and the prosecutor to repeat, a police officer's opinion that appellant would have been too impaired by alcohol to legally drive at the time of the alleged offense.

We have held that a police officer's testimony about the level of impairment from alcohol consumption is not an expert opinion and is admissible with proper foundation. *State v. Ards*, 816 N.W.2d 679, 684 (Minn. App. 2012)  "[T]raditionally the foundation required before an opinion regarding intoxication can be given has been testimony concerning observation of manner of walking and standing, manner of speech, appearances of eyes and face, and odor, if any, upon such person's breath." *Id.* (quoting *State v. Hicks*, 301 Minn. 350, 353, 222 N.W.2d 345, 348 (1974)).

The officer in this case provided sufficient foundation for his opinion by testifying that he "detected that odor of alcoholic beverage on [appellant's] breath as we talked." He made other observations of appellant consistent with alcohol intoxication.

The parties dispute whether this argument was properly preserved below.  The state argues that the plain-error test applies because appellant did not advance at the district court the precise arguments he makes on appeal.  Appellant argues that his objection to the district court was sufficient to preserve the argument for appeal, and that the harmless-error test applies.  We need not decide the preservation issue because appellant's arguments fail under either test. *See* Minn. R. Crim. P. 31.01 ("Any error that does not affect substantial rights must be disregarded."); Minn. R. Crim. P. 31.02 ("Plain error affecting substantial rights can be considered by the court on motion for new trial

9

. . . or on appeal even if it was not brought to the trial court's attention."). The district court's decision to allow the police officer's testimony that, in his opinion, appellant was too impaired to legally drive was not erroneous. Moreover, that testimony was neither prejudicial nor did it affect a substantial right, because appellant himself told a police officer that he was "drunk as a skunk" when he was arrested, and acknowledged that he had been drinking heavily throughout the night. The jury had ample evidence on which to conclude that appellant was impaired, even without the contested statement by the officer.

Appellant also argues that the officer's testimony was highly prejudicial because it insinuated that appellant actually drove the car, which was a critical fact question for the jury. *See State v. Moore*, 699 N.W.2d 733, 740 (Minn. 2005) (holding that testimony regarding the ultimate issue in a case is not always objectionable); *but see State v. Grecinger*, 569 N.W.2d 189, 193 (Minn. App. 1997) ("Special care must be taken by the trial judge to ensure that the defendant's presumption of innocence does not get lost in the flurry of expert testimony and, more importantly, that the responsibility for judging credibility and the facts remains with the jury."). While the prosecutor's first iteration of the question to the officer was arguably improper ("[W]as it unsafe for [appellant] to operate a motor vehicle?"), the question was rephrased and did not call for the officer to opine concerning whether appellant actually drove the car. The officer testified, "It was my opinion that he was intoxicated and *would have been* over the legal limit to operate a motor vehicle in the state of Minnesota." (Emphasis added.) The officer, who of course

10

did not know whether appellant had been driving, was not asked to nor did he opine concerning whether appellant drove.

## II. Accomplice testimony

Appellant argues that the district court plainly erred by failing to instruct the jury that a conviction cannot rest upon the uncorroborated testimony of an accomplice. *See* Minn. Stat. § 634.04 (2014). We review for plain error because this issue was not raised before the district court. The plain-error test requires the appellant to show (1) error, (2) that was plain, and (3) that affected substantial rights. *Griller*, 583 N.W.2d at 740. An error is plain if it is "clear and obvious; usually this means an error that violates or contradicts case law, a rule, or an applicable standard of conduct." *State v. Matthews*, 779 N.W.2d 543, 549 (Minn. 2010) (citation omitted).

An accomplice is "[a] person [who] is criminally liable for a crime committed by another if the person intentionally aids, advises, hires, counsels, or conspires with or otherwise procures the other to commit the crime." Minn. Stat. § 609.05, subd. 1 (2014). Appellant argues that the test for determining whether a witness is an accomplice should be whether the witness could have been charged and convicted for the crime alleged against the defendant. *See, e.g.*, *State v. Jensen*, 289 Minn. 444, 446, 184 N.W.2d 813, 815 (1971). But appellant misconstrues *Jensen* and overlooks the important distinction between an alternative perpetrator and an accomplice. The Minnesota Supreme Court has recognized this distinction, and has held that an accomplice-liability instruction is not required where the defendant presented an alternative-perpetrator theory at trial. *State v. Larson*, 787 N.W.2d 592, 603 (Minn. 2010).

11

At its core, any definition of "accomplice" must include some conjunctive act or mutual intent involving two or more people.  An accomplice is "[s]omeone who is in any way involved *with another* in the commission of a crime," or "[s]omeone who knowingly, voluntarily, and intentionally *unites with the principal offender* in committing a crime and thereby becomes punishable for it."  *Black's Law Dictionary* 20 (10th ed. 2014) (emphases added).  Appellant's theory of the case was *not* that A.D. assisted him in his commission of a crime.  Appellant's trial strategy was that he was not the drunk driver—A.D. was.  There is no evidence that A.D. assisted appellant in any way.  And the jury found beyond a reasonable doubt that it was appellant who was driving while impaired.

The district court neither erred nor plainly erred in declining to instruct the jury concerning the corroboration requirement for accomplice testimony.

## III.    Cumulative error

Appellant argues that the cumulative effect of erroneous evidentiary rulings entitles him to a new trial.  We construe his cumulative-effect argument broadly as to include the effect of the claimed error in not instructing the jury on accomplice testimony.  It is true that an appellant "is entitled to a new trial if the errors, when taken cumulatively, had the effect of denying appellant a fair trial."  *State v. Keeton*, 589 N.W.2d 85, 91 (Minn. 1998).

Appellant cites *State v. Mayhorn* in support of his argument that the cumulative evidentiary errors warrant a new trial.  720 N.W.2d 776 (Minn. 2006).  But *Mayhorn* is easily distinguishable.  In *Mayhorn*, the Minnesota Supreme Court ordered a new trial

where at least ten instances of prosecutorial misconduct and two evidentiary errors prevented the jury from focusing on the real issues in the trial. *Id.* at 792. Appellant also cites *State v. Glaze* as authority for his claim that cumulative evidentiary errors warrants a new trial, but *Glaze* affirmed a murder conviction despite trial errors, where the supreme court concluded that the errors did not deprive appellant of a fair trial. 452 N.W.2d 655, 661-62 (Minn. 1990). Just so in this case: any error that may have been committed by the district court did *not* have the effect of depriving appellant of a fair trial.

**Affirmed.**